# ❙ Croft *against* Steele.

If a verdict and judgment be obtained by a plaintiff in an action in which the pleadings might embrace all his claims against the defendant, it will be presumed, in the absence of proof, that all were passed upon by the jury.  But it is not conclusive.  The plaintiff may show, either that a particular claim was not made, or if made, that it was distinctly withdrawn from the jury.  Without such proof it is error to permit a plaintiff to recover.

ERROR to the common pleas of Fayette county.

John Steele and William Steele against George Croft, late sheriff of Fayette county.

This was an action of debt, to recover money made by the sale of the real estate of John Cannon, under the circumstances which are fully stated in the opinion of the Court.

*Ewing*, for plaintiff in error, cited 6 *Serg. & Rawle* 57; 1 *Penns. Rep.* 152.

*Forward* and *Flanagan*, contra, cited 17 *Mass.* 237; 16 *Mass.* 305; 10 *Serg. & Rawle* 285.

The opinion of the Court was delivered by

HUSTON, J.—The following is a statement of the facts in this case as they were presented to us.  Daniel Cannon, the elder, died seised of lands in Fayette county.  Upon a proceeding in the orphans' court, and a valuation of his lands, a tract was taken at the appraisement by his son John Cannon, who, on the 27th of March 1798, entered into recognizance to pay their respective proportions to each of his brothers and sisters; Isabella, one of the sisters, married John Witherow, John and William Steele obtained a judgment against John Cannon the younger, and issued executions, on which the land of John Cannon, at March term 1824, was sold to Daniel Cannon.  On the 3d of March 1824, John Witherow assigned the recognizance to him and his wife, to the Steeles.  It would seem, there were many claimants of the money produced by the sale of John Cannon's lands.  It seems from the statement of the counsel, and from this, and other cases from that district, to have been the practice to enter an amicable suit, by the claimant of the money against the purchaser at sheriff's sale.  We have now an act of assembly regulating the mode of deciding questions as to the rights of different persons claiming the proceeds of land sold, on execution, by virtue of different liens, but at all times, before this act, if the matter was submitted to the court, or if a real suit was brought against the sheriff, who gave notice to the adverse

[Croft v. Steele.]

claimant to defend, or if the claimants agreed on an amicable action to try the right of a particular claimant to the fund, the decision of the court, or of the court and jury, unless there was an appeal or writ of error, was conclusive on the parties; and it would be strange if the law had not been so. It would not be permitted to a party to such claim, to bring suit afterwards and recover, on showing that the jury were mistaken as to the facts, or the court mistaken as to the law.

In the present matter, there was entered on the docket of the common pleas of Fayette county, an amicable action, No. 7, of October term 1827, which, it was admitted, was for the same money.

John Steele and William Steele against Daniel Cannon, amicable action on the case, which is now entered by the consent of the parties, for the purpose of trying the right of plaintiff to the purchase money, or part of it, which the defendant bid for the real estate of the late John Cannon, at sheriff's sale, upon process issued upon a judgment of plaintiff, against John Cannon, signed by the attorneys of the parties.

The declaration is stated to have been *indebitatus assumpsit*, for the whole price of the tract of land sold at sheriff's sale. Pleas, *non-assumpsit* and payment, with leave to give the special matter in evidence. At length a case was stated for the opinion of the court, and on it judgment was entered for the defendant. The case stated is not to be found; George Croft was the sheriff who sold the land, and this suit was brought against him to November term 1832, to recover the amount due the plaintiffs on the recognizance to Witherow and wife in 1798, and which, as is stated above, had been assigned to the plaintiffs on the 3d of March 1824. The defendant having given in evidence the amicable suit above stated, and the judgment on it, requested the court to charge the jury that it was conclusive against the plaintiff's claim.

The president of the court, after stating as above, the situation and rights of the parties, and the claim of Messrs. Steele on their judgment and recognizance, and the amicable action and judgment, proceeds to say, " the plaintiffs *allege that the suit* referred to, merely embraced their claim to receive out of the proceeds of the sale, the amount of their judgment; and that their right under the recognizance was not involved. *We think this highly probable,* and cannot, therefore, say the plaintiffs are barred by the decision in that case. The judgment on which the sale was made, originated long before their right accrued under the assignment of the share of Witherow's wife. It was followed up by execution and sale. The terms of the amicable action as expressed by the writing filed, do not preclude the idea urged by the plaintiff's counsel, nor is the declaration inconsistent with it as I conceive. The whole proceedings may be reconciled to such a state of facts. If the truth of the matter is so, to decide against the plaintiffs on the ground urged, would be, not only to defeat them of their right to the money under their

[Croft v. Steele.]

judgment, but strip them of the amount of the patrimony of Witherow's wife, which they have acquired by purchase.

In the hurry of a trial every judge who ever sat has, we believe, at times, mistaken the law; and at times been mistaken in the fair inferences to be drawn from the facts.

We have several cases bearing pretty directly on the matter of law, arising from the facts of this case. Hess *v.* Heble, is reported in 4 *Serg. & Rawle,* and again in 6 *Serg. & Rawle* 57. The two hearings of the same case must have brought the subject fully under the consideration of this court, and it is there decided, that on a suit brought to recover 40 pounds, being the balance of a first instalment, and 50 pounds, being the second instalment, amounting, together, to 90 pounds; and a trial and a recovery of a sum which would seem to be 50 pounds and interest; the plaintiff cannot, in another trial for the 40 pounds, show that the jury did not pass upon the right of the plaintiff to the 40 pounds; but that whenever several demands are due, and can be sued for in one suit, and are sued for and united in one count, and the aggregate claimed, the verdict and judgment must be conclusive on every part of the demand. Though it is admitted, that if defendant's demands, as a note and book account, are claimed in different counts, and no evidence given on one of the counts, but is expressly withdrawn from the consideration of the jury, there may be a recovery on the matter contained in the count so withdrawn, in a subsequent action; but the proof that it was so withdrawn, and that no evidence was given on that count, lies on the plaintiff. The presumption always is, that the jury passed on all the matters contained in the whole declaration; and the law requires them to do so. Their verdict will be presumed to embrace all; and if it appears that it did not dispose of the whole issues, it will be set aside, unless some of the counts were withdrawn from them and no evidence given on such counts.

In Wilson *v.* Wilson, administrator of Hamilton, 9 *Serg. & Rawle* 429, this subject again came before the court. There had been a former suit in *assumpsit,* for money had and received, in which the plaintiff had recovered all the defendant had then received. A second suit was brought, and the plaintiff claimed again for money had and received. Defendant pleaded the former verdict and judgment. It will be remembered, that in this form of action, the date is held immaterial, and the sum laid in the narr, is not material and generally is twice the amount claimed. The plaintiff was permitted to prove that the sum demanded in the last suit was received by the defendant since the institution of the first suit; and the proof was full, from the judge's notes and other testimony, that on the trial of the former suit, no evidence was given (as indeed none could have been legally given) of any money received since the institution of the suit. But there the proof lay on the plaintiff. In the present case, it would seem, the plaintiff gave no proof, but

[Croft v. Steele.]

the counsel alleged, the facts were in a certain way, and the court thought it highly probable, and left it to the jury to find on probability. The fact that J. and W. Steele purchased this old claim of Witherow, on the 3d of March 1824, when the land on which it was supposed to be a lien was then advertised to be sold at March term, (or perhaps had been sold,) on their judgment, might raise some presumption that this recognizance was intended to be brought in as a lien on the land, and entitled to part of the price for which it should be sold.

Their right to the purchase money was disputed, and to settle it, the amicable suit was instituted, in 1827, to ascertain their right to the purchase money, *or part of it.* The narr did not necessarily embrace it, but it was precisely in the form which, under the terms of the agreement to enter the amicable action, would let in proof of any and every claim to that money. And nothing but the most unequivocal proof that this recognizance was not considered or decided on, could avail the plaintiff, even as against D. Cannon, if the present suit was against him.

But it seems, this money was suspended in court or in the hands of George Croft, from the sheriff's sale until the decision in the amicable action. That decision on the face of it put an end to all claim of John and William Steele to the money and *every part of it.* The sheriff could not, after that, retain any part of it for them or for their use, under any claim which they had when they entered into that amicable action. And it would look like monstrous injustice to permit them, at the end of five years, to recover from him, not because he was guilty of any default, but because they themselves had neglected to produce their claim in the suit instituted by themselves, and in which it might and ought to have been produced and decided on. This I say, on the supposition that he distributed the money to the other claimants and has none of it, nor notice to retain it.

There is another matter, which, if the plaintiffs carry the cause to another trial may be worth consideration. This recognizance to Witherow and wife, is dated in 1798, and by the act of assembly, should have been payable in one year. If it was so, and nothing appears to make it an exception, it will be presumed to have been satisfied in 1819 or 1820. When this suit was brought, it was above thirty years old, and at the sheriff's sale, at least twenty-four years due; and unless something had occurred, would be presumed paid. In a *scire facias* on it, against John Cannon, and plea of payment, the jury would have been bound to find it paid, unless kept alive by some promise or agreement of John Cannon. If there was any such agreement or promise *in pais,* which would keep it alive against John Cannon, the recognizor, but nothing on the record, I would hesitate long, before I would say a sheriff was bound to go twenty-four years back to look for liens, and liable for one if brought against him eight years after a

[Croft v. Steele.]

sale, and thirty-four years after the date of the lien. And I would require a very peculiar state of facts and very special notices to him, before I could believe it possible that he could be liable.

Judgment reversed, and *a venire de novo* awarded.